OBERLIN v WOLVERINE GAS AND OIL COMPANY

Docket No. 111999. Submitted November 7, 1989, at Grand Rapids.
    Decided December 18, 1989.

The Legislature enacted the dormant minerals act effective Sep-
tember 6, 1963. The act provides that mineral rights are
abandoned and revert to the owner of the surface land unless
those rights have been sold, leased, mortgaged or transferred or
a claim of interest filed with the register of deeds, or other
specified action taken, within the twenty-year period since the
last such transaction or recording. The Legislature also pro-
vided a three-year grace period for owners of mineral rights to
record a claim of interest following enactment of the act.
George and Darleen Oberlin acquired an individual ³⁄₁₆₀ inter-
est in the minerals of certain land through a mineral deed
dated August 11, 1966, and recorded on August 15, 1966, within
the three-year grace period following the enactment of the act.
In 1984, the Oberlins executed a lease with Wolverine Gas and
Oil Company. Wolverine failed to continue making payments
under the 1984 lease and the Oberlins filed suit against Wolve-
rine in Kent Circuit Court seeking to establish that their
interest in the mineral rights of the subject property had not
been extinguished by the dormant minerals act. Wolverine
subsequently agreed with plaintiffs' interpretation of the act,
and filed a third-party action against Grace Petroleum Corpora-
tion and others, all interest holders of record of an oil and gas
lease from the surface owners. The third-party defendants
contended that none of the statutorily enumerated acts had
taken place for a period of more than twenty years prior to the
effective date of the act and that the plaintiffs' interest there-
fore would have been deemed abandoned and reverted to the
surface owners if not for the three-year grace period. Further,
they contended, plaintiffs did not file a "claim of interest," as
required by the act, during the grace period and their mineral

REFERENCES

Am Jur 2d, Gas and Oil §§ 208, 289, 313, 314; Mines and Minerals
    §§ 61, 216.
Validity and construction of statutes providing for reversion of
    mineral estates for abandonment or nonuse. 16 ALR4th 1029.

deed did not serve to preserve their interest because the statute provided for no means of preserving an interest during the grace period other than a "claim of interest." Plaintiffs and Wolverine argued that the recording of the mineral deed in 1966 was adequate to preserve plaintiffs' interest. The court, George R. Cook, J., agreed and granted a declaratory judgment in favor of plaintiffs and Wolverine. Third-party defendants appealed.

The Court of Appeals *held:*

The recording of plaintiffs' mineral deed in 1966 was sufficient under the dormant minerals act to preserve plaintiffs' interest in the mineral rights. Although a literal reading of the statute suggests that the only means to preserve an interest in mineral rights during the three-year grace period where more than twenty years had passed since the last filing of one of the other documents mentioned in the statute would be to file a "claim of interest," a literal application of that term, requiring the filing of a document entitled "claim of interest," would produce not only an absurd and unjust result, but would be inconsistent with the purposes of the statute. The purpose of the act is achieved by the filing of virtually any document which identifies the holder of the mineral rights.

Affirmed.

GAS AND OIL — DORMANT MINERALS ACT — CLAIMS OF INTEREST — GRACE PERIOD.

The dormant minerals act, which became effective September 6, 1963, and included a three-year grace period for the filing of claims of interest in mineral rights, provides that mineral rights are abandoned and revert to the owner of the surface land unless those rights have been sold, leased, mortgaged or transferred or a claim of interest filed with the register of deeds, or other specified action taken, within the twenty-year period since the last such transaction or recording; although a literal reading of the statute would require the filing of a document entitled "claim of interest" during the three-year grace period to preserve an interest in mineral rights, such a requirement would be absurd and unjust; the purpose of the act would be achieved by the filing during the grace period of virtually any document which identifies the holder of the mineral rights (MCL 554.291 *et seq.*; MSA 26.1163[1] *et seq.*).

*Muller, Muller, Richmond, Harms, Myers & Sgroi, P.C.* (by *David C. Myers* and *David L. Baatenburg*), for plaintiffs.

*Lynam & Associates* (by *Terrence V. Lynam* and *Keith E. Moffatt*), for Grace Petroleum Corporation.

*Mika, Meyers, Beckett & Jones* (by *Mark A. Kehoe*), for H & H Star Energy, Inc., Ward M. Haggard, Jr., Kenneth A. Kearney, Natural Investments, Inc., and Wayne L. and Shirley A. Huey.

Before: MURPHY, P.J., and HOLBROOK, JR., and SAWYER, JJ.

SAWYER, J. Third-party defendants, except for Grace Petroleum and the Patricks, appeal from a declaratory judgment in favor of plaintiffs and defendant on plaintiffs' action to determine ownership of certain mineral interests that were in dispute and to affirm a lease between plaintiffs and defendant concerning those mineral interests. We affirm.

The matter was submitted to the trial court on stipulated facts. Briefly, plaintiffs claim ownership of an undivided $\frac{3}{160}$ interest in the minerals in the subject land. Plaintiffs obtained their interest through a mineral deed dated August 11, 1966, which was recorded on August 15, 1966. Plaintiffs' grantor, Herbert Cole, had obtained his interest in the mineral rights pursuant to a mineral deed dated March 22, 1943, and recorded June 1, 1943. Apparently, the only activity concerning the mineral rights during Cole's ownership was a release of an oil and gas lease dated October 7, 1944, and recorded on October 13, 1944, by the Ohio Oil Company concerning a lease executed in 1941 by a predecessor in interest to Cole. There does not appear to have been any further leasing of the mineral interests until 1984, when plaintiffs exe-

cuted a lease with defendant Wolverine Gas & Oil
Company.

At issue in this appeal is whether plaintiffs'
interest in the mineral rights was abandoned un-
der the provisions of the dormant minerals act,
MCL 554.291 *et seq.*; MSA 26.1163(1) *et seq.* Under
the act, mineral rights are abandoned and revert
to the owner of the surface land unless those
rights have been sold, leased, mortgaged or trans-
ferred or a claim of interest filed with the register
of deeds, or other specified action taken, within the
twenty-year period since the last such transaction
or recording.

Specifically, MCL 554.291; MSA 26.1163(1) pro-
vides as follows:

Any interest in oil or gas in any land owned by
any person other than the owner of the surface,
which has not been sold, leased, mortgaged or
transferred by instrument recorded in the register
of deeds office for the county where such interest
is located for a period of 20 years shall, in the
absence of the issuance of a drilling permit as to
such interest or the actual production or with-
drawal of oil or gas from said lands, or from lands
covered by a lease to which such interest is sub-
ject, or from lands pooled, unitized or included in
unit operations therewith, or the use of such inter-
est in underground gas storage operations, during
such period of 20 years, be deemed abandoned,
unless the owner thereof shall, within 3 years
after the effective date of this act or within 20
years after the last sale, lease, mortgage or trans-
fer of record of such interest or within 20 years
after the last issuance of a drilling permit as to
such interest or actual production or withdrawal
of oil or gas, from said lands, or from lands cov-
ered by a lease to which such interest is subject, or
from lands pooled, unitized, or included in unit
operations therewith, or the use of such interest in
underground gas storage operations, whichever is

later, record a claim of interest as hereinafter provided. Any interest in oil or gas deemed abandoned as herein provided shall vest as of the date of such abandonment in the owner or owners of the surface in keeping with the character of the surface ownership.

The phrase "drilling permit" shall mean a permit to drill an oil or gas well issued by the conservation department or its successor.

The act took effect September 6, 1963.

At the time of the execution of the mineral deed from Cole to the Oberlins, over twenty years had passed since the last such recording, though the deed was executed within the three-year grace period provided for in the statute since it was recorded prior to September 6, 1966. The question presented on appeal is whether the recording of a mineral deed within the grace period, but more than twenty years since the last previous recording, was sufficient to preserve plaintiffs' interest in the mineral rights. Plaintiffs and defendant argue that the recording of such a deed is sufficient under the act, while appellants maintain that, since more than twenty years had passed since the last recording, only the recording of a "claim of interest" during the grace period would suffice and, therefore, the recording of the mineral deed was insufficient to preserve plaintiffs' interest. We agree with plaintiffs.

A literal reading of the statute would suggest that the only means to preserve an interest in mineral rights during the three-year grace period where more than twenty years had passed since the last filing of one of the other documents mentioned in the statute would be to file a "claim of interest."

Appellants are correct that, generally, where a statute is clear and unambiguous there is no need

for the courts to construe the statute and the statute should be applied according to its literal terms. *Sam v Balardo,* 411 Mich 405, 417-418; 308 NW2d 142 (1981). However, as with most rules of law, an exception exists to the general rule. Specifically, where a literal construction of a statute would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the statute in question, the court may depart from a literal construction of the statute. *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976). In the case at bar, a literal application of the statute's term would produce not only an absurd and unjust result, but would be inconsistent with the purposes of the statute.

The purpose of the dormant minerals act was not to abolish severed mineral interests, but to promote the development of mineral interests by reducing the difficulty in locating the owners of severed mineral interests where there has been no recent recording of those interests. *Van Slooten v Larsen,* 410 Mich 21; 299 NW2d 704 (1980). By requiring a periodic recording of mineral interests in the register of deeds office, once every twenty years, the Legislature provided a means of insuring that a person interested in purchasing or leasing mineral rights would have information on the identity and whereabouts of the owners of those mineral rights that was no more than twenty years old. Otherwise, such a person, such as defendant in the case at bar, might only know who owned part or all of the mineral rights several decades before and be presented with the difficult, if not insurmountable, problem of identifying and locating the current owners of those rights.

The legislative purpose of the act can be achieved by the filing of virtually any document

which identifies the holder of the mineral rights. Thus, the statute is satisfied by the filing of any of numerous documents which would serve to identify the owner of the rights, such as a mineral deed, a lease, a mortgage or other transfer which is recorded with the register of deeds. If such a document is filed at least once every twenty years, the statute is satisfied and the owner's mineral rights are preserved. Furthermore, since the mineral rights won't necessarily be transferred or leased every twenty years, the Legislature provided a mechanism by which the owner could retain his rights without engaging in such a transfer by filing a "claim of interest." The claim of interest essentially notifies the public of the identity and location of the current owner of the mineral rights and declares his intent to retain his rights. The specific requirements of what must be contained in a notice of a claim of interest are set forth in MCL 554.292; MSA 26.1163(2). The parties do not dispute the fact that the mineral deed filed in 1966 does not comply with the requirements of § 2 to constitute a "claim of interest." We do not, however, believe that the failure of the mineral deed to meet the requirements of a "claim of interest" is important to the resolution of this case.

It is undisputed that, had a mineral deed, lease, or other such document been filed within the twenty-year period preceding the filing of the mineral deed in 1966, the 1966 filing would have been sufficient to preserve plaintiffs' mineral rights until 1986, by which time another filing would be necessary. It is also undisputed that had a "claim of interest" notice which met the requirements of § 2 of the act been filed with the mineral deed in 1966 that too would have protected plaintiffs' mineral rights until 1986. To conclude, as appellants

urge us to do, that the filing of the mineral deed in 1966 without an accompanying claim of interest notice is insufficient to preserve plaintiffs' rights under the dormant minerals act would, in our opinion, produce an absurd and unjust result inconsistent with the legislative purpose of the dormant minerals act.

When the Legislature enacted the dormant minerals act, imposing the requirement that there be a recording at least once every twenty years, it obviously recognized that, at the time of the passage of the act, there would be numerous cases in which there were mineral rights for which there had been no recording in the twenty-year period preceding the passage of the act. Without a grace period, those rights would have been extinguished upon the act's taking effect. To prevent such a result, the Legislature provided a three-year grace period during which the owners of mineral rights could protect their interests by recording a document with the register of deeds.

While the strict wording of the statute indicates that the owners of such dormant rights had to file a claim of interest notice during the grace period as the only means of protecting their rights, such a literal interpretation of the statute is inappropriate. The claim of interest notice is not a "super document" which possesses some special power or purpose in the dormant minerals act. Rather, it was merely established by the Legislature to provide a means for complying with the requirement of a recording every twenty years without the necessity of engaging in a transfer or lease of mineral rights. Without the claim of interest notice it would be necessary for the owner of a severed mineral right to engage in a paper transaction such as deeding his mineral rights to a third party and then having that third party deed

the rights back to the owner on the same day in order to create a document for filing or to lease the mineral rights to a third party for a nominal sum for a one-day lease to provide a lease for filing.

Rather than requiring such absurd and meaningless paper transactions, the Legislature established a provision for filing a claim of interest notice. The claim of interest notice has no statutory significance beyond this. Had the claim of interest notice held some special place in the legislative scheme, the Legislature would have required such a filing every twenty years regardless whether a mineral deed or lease or other document had been filed. Clearly, the claim of interest notice merely substitutes for these other documents where there is no need to make a recording with the register of deeds office for any purpose other than preserving one's rights under the dormant minerals act.

Since the claim of interest notice serves no special purpose other than to notify the public of the current identity and location of the owner of mineral rights and the Legislature is satisfied with the filing of a mineral deed or other document providing such notice so long as it is done every twenty years, we see no need or legislative intent to require the filing of a claim of interest during the grace period where more than twenty years had passed since the last recording. To impose such a requirement would be absurd. The wording of the statute can be best explained by concluding that the drafters established the grace period for those rights that had lain dormant for more than twenty years so that the owners could file a claim of interest notice to preserve those rights, without realizing that some of those dormant rights might be transferred during the grace period, such as

happened in the case at bar. It would not advance the legislative purpose behind the dormant minerals act to conclude that plaintiffs' mineral rights had been abandoned by the failure to file a claim of interest notice and to reach such a conclusion would be absurd and would constitute an unjust result to plaintiffs.

For the above reasons, we conclude that no special rule should apply to a filing during the grace period between 1963 and 1966 than what would be applied under the requirement that there be a filing every twenty years. That is, if a filing would be sufficient to preserve the mineral rights owner's interest under the twenty-year rule, it is sufficient to preserve the mineral rights owner's interest if filed during the grace period, even where the mineral rights had lain dormant for more than twenty years. Specifically, since the mineral deed filed in 1966 in this case would be sufficient to preserve plaintiffs' rights under the twenty-year rule, it effectively preserved plaintiffs' rights in this case since it was filed during the grace period, even though the mineral rights owned by plaintiffs had lain dormant for more than twenty years.

Affirmed. Appellees may tax costs.