*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KINGSBURY COUNTRY DAY SCHOOL and
KINGSBURY SCHOOL, INC.,

UNPUBLISHED
February 18, 2020

Appellants,

v

No. 344872
Oakland Circuit Court
LC No. 2017-160571-AA

ADDISON TOWNSHIP, ADDISON TOWNSHIP
ZONING BOARD OF APPEALS, and NEW PAR,
doing business as VERIZON WIRELESS,

Appellees.

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Appellants, Kingsbury Country Day School and Kingsbury School, Inc., appeal as of right the circuit court's order affirming the decision of appellee, Addison Township Zoning Board of Appeals (the ZBA), which granted a nonuse variance to appellee, Addison Township (the Township). We reverse.

## I. FACTS

This appeal involves a parcel of land owned by the Township that consists of approximately 5.23 acres located at 5020 Hosner Road in Oxford Township. In 2016, appellee New Par, doing business as Verizon Wireless (Verizon), entered into an agreement with the Township to place a cellular tower on the parcel. In doing so, Verizon hoped to provide cellular service to its customers in what it describes as a service "dead zone." Under the agreement, Verizon would pay the Township approximately $17,000 annually to place its tower on the Hosner

Road property.  The Township has designated the zoning of the parcel as Public Institutional 1 (P-1), and the parties do not dispute that the proposed cellular tower is a permitted use in P-1 zoning.[1]

Section 4.47(4)(b)(3) of the Township's Wireless Communication Facilities ordinance requires that, for the placement of a cellular tower, "[t]he minimum lot size shall be twenty (20) acres." Thus, to locate the cellular tower on the Hosner Road property requires a dimensional variance for the parcel from the requirements of § 4.47(4)(b)(3) of the ordinance.  In May 2017, the Township supervisor applied to the ZBA on behalf of the Township, seeking a dimensional variance for the parcel from the 20-acre requirement.

Kingsbury Country Day School is located on property adjacent to the Hosner Road parcel. The school is located partially on property owned by Kingsbury School, Inc. and leased to the school, and partially on property that the school leases from the Township.  The parties do not dispute that if the cellular tower is constructed on the Hosner Road property in the location proposed, the school's playground is within the fall zone of the tower.  The proposed tower would be 197 feet high and the placement of the cellular tower as planned would place the tower 90 feet from the boundary of the property adjoining the subject property where the school is located.  The parties also do not dispute that §4.47(4)(b)(3) of the Township's Wireless Communication Facilities ordinance requires that "[t]he setback of the [cellular tower] from all lot lines shall be no less than the height of the structure."

Although the Township's application requested a variance from the 20-acre dimensional requirement of the ordinance, the application did not specifically request a variance from the set-back requirement.  However, during the public hearing on the application the Verizon representative speaking on behalf of the Township's application stated that the Township was requesting both a dimensional variance and a variance from the set-back requirement.  After the public hearing on the Township's application, the ZBA held a second hearing and granted the application for the requested variance.  The ZBA did not make any findings nor specify whether it was granting a variance from the set-back requirement.

Appellants appealed the ZBA decision to the circuit court.  The circuit court determined that appellants were entitled to appeal to that court as "aggrieved parties," then remanded the case to the ZBA for a further public hearing on the issue of the fall zone of the proposed tower.  The ZBA held a public hearing as directed by the circuit court and again granted the variance.  The circuit court thereafter affirmed the decision of the ZBA.

Appellants claimed an appeal as of right of the circuit court's decision to this Court. Appellees moved to dismiss the appeal under MCR 7.203(A)(1)(a), contending that this Court did not have jurisdiction to hear the appeal because the circuit court had been acting in its appellate capacity in reviewing the decision of a tribunal, requiring appellants to seek leave to appeal instead of claiming an appeal as of right.  This Court denied the motions to dismiss, holding that appellees "have not shown that the Addison Township Zoning Board of Appeals was acting as a 'court' or

---

[1] Section 4.47(3)(b) of the Township's Wireless Communications Facilities ordinance provides that wireless communications facilities are a permitted accessory use within a district zoned P-1 after special land use approval is granted by the Township's planning commission.

'tribunal' when it granted the application for variance at issue in this case. Therefore, MCR 7.203(A)(1)(a) does not apply and this Court has jurisdiction to hear this appeal as an appeal of right." *Kingsbury Country Day Sch v Addison Twp*, unpublished order of the Court of Appeals, entered September 26, 2018 (Docket No. 344872).

Verizon again moved to dismiss the appeal, this time contending that this Court did not have jurisdiction because appellants are not "aggrieved parties" within the meaning of MCR 7.203(A)(1) and MCL 125.3606. This Court denied the motion to dismiss without prejudice to appellees raising that argument in their brief on appeal. *Kingsbury Country Day Sch v Addison Twp*, unpublished order of the Court of Appeals, entered October 30, 2018 (Docket No. 344872).

## II. DISCUSSION

## A. JURISDICTION

As an initial matter, we address appellees' renewed assertions that this Court does not have jurisdiction to hear this appeal.

### 1. THE ZBA AS TRIBUNAL

The Township and the ZBA contend that this Court lacks jurisdiction to hear this appeal because the circuit court's decision affirming the decision of the ZBA is not a final judgment appealable as of right under MCR 7.203(A)(1)(a). Appellants previously raised this issue in motions to dismiss filed with this Court on August 15, 2018, and August 27, 2018. This Court denied the motions and stated, in relevant part:

> The motions to dismiss are DENIED. Defendants-appellees have not shown that the Addison Township Zoning Board of Appeals was acting as a "court" or "tribunal" when it granted the application for variance at issue in this case. Therefore, MCR 7.203(A)(1)(a) does not apply and this Court has jurisdiction to hear this appeal as an appeal of right. [*Kingsbury Country Day Sch v Addison Twp*, unpublished order of the Court of Appeals, entered September 26, 2018 (Docket No. 344872).]

Generally, the law of the case doctrine provides that an appellate court's ruling on an issue binds the appellate court and all lower tribunals with respect to that issue. *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110; 888 NW2d 295 (2016). The rationale of this doctrine is the need for finality and the appellate court's lack of jurisdiction to modify its judgments except on rehearing. *Id*. Because this Court has already ruled upon this jurisdictional issue presented by the Township and the ZBA, ordinarily we would decline to again address this issue here. However, because subject matter jurisdiction is of such critical importance, we explain our previous ruling here for clarification. See *O'Connell v Director of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016).

MCR 7.203(A)(1)(a) provides that this Court does not have jurisdiction of an appeal claimed by right of "a judgment or order of the circuit court on appeal from any other court or tribunal." The Township and the ZBA suggest that the ZBA in this case was acting as a tribunal when it granted the zoning variance, and that the circuit court's order affirming the grant of the

variance therefore was an order on appeal from a tribunal. An administrative agency that acts in a quasi-judicial capacity may be considered a tribunal for purposes of MCR 7.203(A)(1)(a). See *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 85-87; 832 NW2d 288 (2013). To determine whether an administrative agency was acting in a quasi-judicial capacity, we consider whether the agency's procedures are akin to court procedures. *Id.* at 86. Quasi-judicial proceedings include the procedural characteristics common to court proceedings, such as the right to a hearing, to be represented by counsel, to present evidence, to subpoena witnesses, and to compel the production of documents. *Id.* Here, the decision of the ZBA was made after a public hearing that did not have these characteristics, and thus was not comparable to a court proceeding. The ZBA thus did not act in a quasi-judicial capacity and as a result was not acting as a "tribunal." For that reason, as we previously determined in our order addressing this issue, the circuit court's order was a final order under MCR 7.202(6)(a)(i), appealable as of right under MCR 7.203(A)(1).

## 2. APPELLANTS AS AGGRIEVED PARTIES

In its motion to dismiss filed with this Court on October 4, 2018, Verizon argued that this Court does not have jurisdiction to hear this appeal because appellants are not aggrieved parties under either MCL 125.3606(1) or MCR 7.203. This Court denied the motion, but without prejudice to appellees again raising this issue in their briefs on appeal. *Kingsbury Country Day Sch v Addison Twp*, unpublished order of the Court of Appeals, entered October 30, 2018 (Docket No. 344872). As permitted by this Court's order, Verizon in its brief on appeal has renewed its contention that this Court does not have jurisdiction to hear this appeal because appellants are not "aggrieved parties" within the meaning of §606 of the Michigan Zoning Enabling Act (MZEA), MCL 125.3606(1), and therefore are not entitled to claim an appeal as of right of the decision of the ZBA.

We observe that although both MCR 7.203(A) and MCL 125.3606 use the term "aggrieved party," the court rule and the statute address different situations. MCR 7.203(A) sets forth the jurisdiction of this Court to hear an appeal claimed as of right. That court rule provides, in relevant part:

> (A) **Appeal of Right.** The court has jurisdiction of an appeal of right filed by an aggrieved party from the following:
>
> (1) A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), . . . [MCR 7.203(A).]

Thus, a party claiming an appeal as of right to this Court must be an aggrieved party within the meaning of MCR 7.203(A) to invoke the appellate jurisdiction of this Court. To be an aggrieved party within the meaning of MCR 7.203(A), the party must demonstrate "an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 292; 715 NW2d 846 (2006). In addition, to be aggrieved "one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Id.* at 291 (citations omitted). A party must be "more than merely disappointed over a certain result. Rather the party must have suffered a concrete and

particularized injury, as would a party plaintiff initially invoking the court's power." *Id.* at 291-292. Stated another way, "[a] party who could not benefit from a change in the judgment has no appealable interest." *Manuel v Gill*, 481 Mich 637, 644; 753 NW2d 48 (2008) (quotation marks and citation omitted).

In this case, the circuit court, having concluded that appellants were parties properly before that court, affirmed the decision of the ZBA to grant the variance to the Township and permit the construction of the cellular tower on the parcel adjacent to the school with the fall zone of the tower intersecting the school's playground. This decision was contrary to appellants' interests, which appellants characterize as loss of safety to the students and staff at the school, resulting in a loss of financial security for the school and a loss of financial value as a result of the threat of danger presented by the planned location of the cellular tower. Because appellants have demonstrated a pecuniary interest allegedly affected by the circuit court's decision and a concrete and particularized injury arising from the circuit court's decision, appellants are parties "aggrieved" by the decision of the circuit court. This Court therefore has jurisdiction under MCR 7.203(A) to review appellants' claim challenging the circuit court's decision.

Verizon contends, however, that the circuit court erred when it determined that appellants were properly before the circuit court as parties aggrieved by the decision of the ZBA.[2] The MZEA provides for judicial review of a zoning decision of a local unit of government to the circuit court by a party aggrieved by the decision. *Olsen v Chikaming Twp*, 325 Mich App 170, 179; 924 NW2d 889 (2018). Section 605 of the MZEA, MCL 125.3605, provides, in pertinent part:

> The decision of the zoning board of appeals shall be final. A party aggrieved by the decision may appeal to the circuit court for the county in which the property is located as provided under [MCL 125.3606].

Thus, a party seeking relief from a decision of a ZBA in the circuit court is required to demonstrate that he or she is an "aggrieved" party under the MZEA. *Olsen*, 325 Mich App at 180-181. We review de novo the circuit court's determination that appellants are aggrieved parties under the MZEA, and hold that the circuit court in this case did not err in this determination. See *Olsen*, 325 Mich App at 180.

Under the MZEA, as under MCR 7.203(A), to be a party aggrieved "one must have some interest of a pecuniary nature in the outcome of the case and not a mere possibility arising from some unknown and future contingency" and "have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power." *Olsen*, 325 Mich App at 181. This Court has consistently required that to be a party aggrieved by a zoning decision, "the party must have 'suffered some special damages not common to other property owners similarly situated[,]' "

---

[2] Although considering whether a party is "aggrieved" within the meaning of MCL 125.3605 is similar to considering whether a party is "aggrieved" within the meaning of MCR 7.203, *Olsen v Chikaming Twp*, 325 Mich App 170, 179; 924 NW2d 889 (2018), whether the circuit court correctly determined that appellants were properly before that court because they were "aggrieved parties" under §606 of the MZEA, MCL 125.3606(1), is a separate question that does not implicate the jurisdiction of this Court under MCR 7.203(A).

*Olsen*, 325 Mich App at 183, quoting *Unger v Forest Home Twp*, 65 Mich App 614, 617; 237 NW2d 582 (1975), and must have they suffered a "unique harm different from similarly situated community members." *Id*. at 186.

In this case, appellants assert that unlike other property owners or members of the community, they are aggrieved parties because the cellular tower is a fall risk to the school. To the extent that appellants allege that the school, and the students attending the school, are at heightened risk if the cellular tower were to collapse, and that enrollment could decline as a result of the fall risk of the tower, such considerations constitute special damages not incurred by other members of the community. Put another way, these potential harms are unique and dissimilar from effects that other property owners may experience as a result of the placement of the tower on the subject property. The circuit court therefore properly concluded that appellants are aggrieved parties under MCL 125.3605 and were entitled to appeal to that court from the decision of the ZBA as "aggrieved parties" of the ZBA's decision.

## B. THE CIRCUIT COURT DECISION

Having reiterated that appellants are properly before this court, and having concluded that appellants were properly before the circuit court, we next consider appellants' challenge to the decision of the circuit court affirming the ZBA's decision. Appellants contend that the circuit court incorrectly determined that the ZBA's decision was supported by competent, material, and substantial evidence on the record and further contend that the ZBA failed to comply with its own variance ordinance and cell tower ordinance. We agree.

The MZEA provides for judicial review of the zoning decisions of a local unit of government. *Olson*, 325 Mich App at 179. In that regard, MCL 125.3606 provides, in pertinent part:

(1) Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:

(a) Complies with the constitution and laws of the state.

(b) Is based upon proper procedure.

(c) Is supported by competent, material, and substantial evidence on the record.

(d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

* * *

(4) The court may affirm, reverse, or modify the decision of the zoning board of appeals. The court may make other orders as justice requires.

"Substantial evidence" means evidence that a reasonable person would accept as sufficient to support a conclusion, and is considered to be more than a scintilla of evidence but "substantially less than a preponderance." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340-341; 810 NW2d 621 (2011). Under the substantial evidence test, the circuit court's review of the ZBA's decision is not de novo and the circuit court does not draw its own conclusions from the evidence, nor does the circuit court substitute its judgment for that of the ZBA, but instead determines whether, giving deference to the ZBA's factual findings, the ZBA's decision is supported by substantial evidence. *Id*. at 341.

Our review of a circuit court's decision in an appeal from a decision of a ZBA is de novo to determine whether the circuit court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [ZBA's] factual findings." *Olsen*, 325 Mich App at 180, quoting *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009) (quotation marks and citation omitted). But although the factual findings of the ZBA are entitled to deference, the manner in which a zoning ordinance applies to those facts is a question of law which this Court determines de novo. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 408; 761 NW2d 371 (2008). We review and interpret ordinances in the same manner as we do statutes, and thus the interpretation and application of a municipal ordinance presents a question of law that we review de novo. *Id*. at 407. If the language of an ordinance is unambiguous, we are required to enforce the ordinance as written. *Kalinoff v Columbus Twp*, 214 Mich App 7, 10; 542 NW2d 276 (1995). In applying this statutory standard, we are guided by our Supreme Court's statement under the prior, now repealed zoning statute that "[w]here the facts relating to a particular use are not in dispute, the legal effect of those facts, that is, how the terms of the ordinance are to be interpreted in relation to the facts, is a matter of law, and the courts are not bound by the decision of administrative bodies on questions of law." *Macenas v Michiana*, 433 Mich 380, 395; 446 NW2d 102 (1989) (quotation marks and citation omitted).

In this case, the Township applied for a dimensional variance for the Hosner Road parcel from the 20-acre requirement of the Township's wireless communications ordinance. At the public hearing on the application, a Verizon representative provided additional information and answered questions on behalf of the applicant. Numerous citizens made public comments against the requested variance. At the following hearing, the ZBA granted the application. The ZBA did not make any factual findings on the record nor state its reasons for granting the application. Instead, at the conclusion of the ZBA's second hearing on the application on July 13, 2017, a member of the ZBA moved to approve the Township's variance application, stating:

> First, I want to start off by saying many people have asked why the township doesn't enforce ordinances as they're written. The township has enforced the ordinance[s] as they were written because they have denied or rejected the application because it didn't meet the ordinance. So the township did what they -- the planning commission did what they did.
>
> This board is existing to allow applicants to come and explain why they can't meet the ordinances. And most of what we've been talking about the last couple months have been based on why this variance, acreage variance, is necessary.

The comments that I've heard from people in the public hearing and other stuff that has been sent to the township in my mind breaks down into two basic categories. One is fear of radiation, electromagnetic radiation. Number two is fear of or danger from the tower falling down. And the third is that the tower is ugly; or to say that a different way, it doesn't fit into the rural character of Addison Township.

As far as the EMF radiation's concerned, there is a federal law that's Section 704 of the Federal Telecommunications Act of 1996 specifically preempts consideration – let me read it so I get it right here – specifically preempts consideration of the health and environmental setbacks of radiofrequency radiation at levels below federal current – Federal Communications Commission standards in decisions involving placement and construction and modification of wireless facilities. We cannot use fear of EMF radiation as a reason to approve or disapprove a variance. That's a federal law.

The danger from a falling down tower I think has been described pretty well. The township says that the ordinance is written the way it is, 120 [sic] acres. So that [a] tower [that] is held up by [guy] wires will have a fall zone equal to the height of the tower. The tower – and the research I've been able to do, in Michigan there has never been a cell phone tower fail. I don't know where that picture comes from; I don't believe it's Michigan . . .

Building codes. There has never been a cell phone tower failure in Michigan for Verizon or any other service provider that I've been able to determine.

Number three, the tower is ugly or not [in] keeping with our rural character. This board really isn't qualified to judge ugly; none of us probably would be on the board.

The meaning of rural character is not really very substantive. We would like to think of it as the last 20 years or 50 years. But certainly, if you go back to 100 years, go back to the year 1900, there was no refrigeration or supermarkets. That was the rural character at that time.

I don't think that would be acceptable to the people today. You know, CAT scans and kidney dialysis were unknown. We don't want to go back to that. There was no telecommunications of any kind in 1900. That was the rural character of this township at that time. I think we need to progress.

Having said all that, I'd like to make a motion that we approve the variance, acreage variance, for petition number 17-02.

Although the ZBA then discussed certain requirements of the site plan, the ZBA thereafter voted to grant the variance without making findings regarding whether the application met the Township's ordinance for granting the application. Appellants appealed to the circuit court, which found that the ZBA had not created a sufficient record regarding the potential danger presented by the fall zone of the tower and remanded the matter to the ZBA for a further public hearing. The

ZBA conducted another public hearing, during which Verizon, on behalf of the Township's application, provided further assurances that the tower cannot fall. A member of the ZBA thereafter again moved to grant the variance, stating that the record evidence supported the conclusion that the design of the tower prevented the tower from falling. The ZBA then voted to grant the variance, but without making further findings. The circuit court thereafter affirmed the order of the ZBA under MCL 125.3606(4).

Appellants contend that the Township's application did not meet the requirements of the Township's variance ordinance that would enable the ZBA to grant the variance, and that the ZBA's decision therefore was not supported by competent, material, and substantial evidence. We agree.

By enacting the MZEA, our Legislature has granted local units of government authority to regulate land use and development through zoning. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 515; 838 NW2d 915 (2013). Secion 604 of the MZEA empowers a local ZBA to grant variances from a zoning ordinance as follows, in pertinent part:

> (7) If there are practical difficulties for nonuse variances as provided in subsection (8) or unnecessary hardship for use variances as provided in subsection (9) in the way of carrying out the strict letter of the zoning ordinance, the zoning board of appeals may grant a variance in accordance with this section, so that the spirit of the zoning ordinance is observed, public safety secured, and substantial justice done. The ordinance shall establish procedures for the review and standards for approval of all types of variances. The zoning board of appeals may impose conditions as otherwise allowed under this act.
>
> (8) The zoning board of appeals of all local units of government shall have the authority to grant nonuse variances relating to the construction, structural changes, or alteration of buildings or structures related to dimensional requirements of the zoning ordinance or to any other nonuse-related standard in the ordinance. [MCL 125.3604(7), (8).]

In this case, the Township's variance ordinance sets forth the standards for approval for a variance as follows:

> Section 28.10 – Zoning variances.
>
> The board of appeals may upon appeal of a specific case authorize such variance from the terms of this ordinance as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of this ordinance would result in practical difficulty. **A variance from terms of this ordinance shall not be granted by the board of appeals unless and until**:
>
> 1. A written application for a variance is submitted demonstrating:
>
> a. That special conditions and circumstances exist which are peculiar to the land, structure or building involved and which are not generally applicable to other land, structures or buildings in the same zoning district.

b. That literal interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this ordinance.

c. That the special conditions and circumstances do not result from the actions of the applicant or his or her predecessor.

d. That granting the variance requested will not confer on the applicant any special privileges that are denied by this ordinance to other lands, structures or buildings in the same zoning district.

e. No nonconforming use of neighboring land, structures or buildings in other districts shall be considered grounds for the issuance of a variance. [Emphasis added.]

In this case, the Township sought a variance from the Township's wireless communication facilities ordinance that provides, in pertinent part:

Section 4.47 – Wireless communication facilities.

(4) b. Standards and conditions applicable to special land use facilities. Wireless communication facilities as described in Subparagraph(3)(b) shall be permitted only after special approval is granted by the planning commission in accordance with the procedures, requirements and standards set forth in this section and in Article 30, and subject to any conditions imposed by the planning commission. The following standards shall be met:

* * *

2) The minimum lot size shall be twenty (20) acres.

3) The setback of the support structure from all lot lines shall be no less than the height of the structure. Structures shall be set back from existing or proposed right-of-way line an additional fifty (50) feet beyond the height of the structure.

The Township's application for the variance stated in pertinent part:

Applicant requests a variance for the placement of [a] wireless communication facility. A dimensional variance for lot area of 14.76 acres from zoning ordinance provisions: wireless communication facilities Article 4.47, Section 4.b2 "the minimum lot size shall be twenty (20) acres."

1. Due to the topography of this site, the site does not require the 20 acres.

2. The westerly property line on Hosner Road is shielded by a large hill. The base will not be visible from Hosner Road.

-10-

3. The parcel is vacant. Unlike other locations, there is no need to construct close to the road; the proposed tower is located 200 feet from the centerline of Oakwood Road. The selected location provides a natural landscape barrier for the surrounding properties.

4. The site will not house accessory wireless structures.

5. Proposed monopole collapsible tower does not require a fall zone.

6. The site area is carefully selected so that [placement of the tower] will not disturb the wetlands.

7. The fenced site area shall be shielded with 6-7 foot evergreen trees for year round visual protection as provided by Verizon and must be approved by the site plan process.

Thereafter, the Township supervisor submitted further correspondence to the ZBA citing the requirements of the Township's variance ordinance and explaining that the intent of the Township wireless communication facilities ordinance "is to have the wireless facilities on larger parcels in certain . . . districts to avoid placement in a residential zone and for the larger parcels to 'hide' the cell tower." The Township supervisor further explained:

Thus, the objective of the 20 acres [requirement] is to ensure that the cell tower is protected from view to the best extent possible. Historically, most wireless facilities are placed as close to the road as possible. Although our ordinance asks for a larger parcel, we cannot ask for the tower to be more centrally located. We are accomplishing this objective by using the parcel selected. We have a parcel that will be protected from future building projects. We are minimizing the disturbance to the natural features and visual impact. We will use the driveway to access the cemetery so we no longer disturb the school. The portion of the parcel that we lease to the school is not calculated in the parcel size. In summary, the parcel selected shields the cell tower by natural topography and accomplishes the goals and objectives of the applicable ordinances.

Although the ZBA thereafter granted the requested variance, the ZBA did not make factual findings nor articulate whether the Township had met the requirements established by the Township's ordinance for granting a variance. Specifically, the ZBA did not articulate whether the Township had established

a. That special conditions and circumstances exist which are peculiar to the land, structure or building involved and which are not generally applicable to other land, structures or buildings in the same zoning district.

b. That literal interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this ordinance.

c. That the special conditions and circumstances do not result from the actions of the applicant or his or her predecessor.

d. That granting the variance requested will not confer on the applicant any special privileges that are denied by this ordinance to other lands, structures or buildings in the same zoning district.

Further, our review of the record indicates no support for the conclusion that the Township's application established these standards. The Township's application does not demonstrate that the parcel has special conditions and circumstances peculiar to it that are not generally applicable to other parcels in the same zoning district. A review of the record suggests that the parcel has neither a special condition nor a peculiar circumstance different from other parcels in the zoning district; it is simply too small to meet the dimensional requirement established by the Township's ordinance.

Rather than demonstrating that the parcel has a special condition or peculiar circumstance necessitating a variance, the Township's variance application addresses why the site is a desirable one for a cellular tower, suggesting that the topography of the subject property is so desirable for this purpose that a 20-acre parcel is not necessary. However, apparently because part of the 5-acre parcel consists of wetlands, to construct the tower on the parcel apparently requires that the tower be placed only 90 feet from the property line, contrary to the Township's ordinance requirement that the tower be placed as far from the property line as the tower is tall. This proximity of the tower site to the property line became one of the main points of contention during the public hearing, creating great public concern whether the fall zone of the tower poses a danger to the school next door. The record thus suggests that the size and topography of the parcel, far from being ideal, creates public concern likely avoidable on a larger parcel.

Similarly, although the Township's application states that denial of the variance would deny the Township the rights that are availed to other properties in the area that are zoned appropriately, the Township's application does not demonstrate that this is so. The Township's ordinance requires all parcels to be 20 acres or more to be an acceptable site for location of a cellular tower. Nothing in the Township's application demonstrates that other parcels that are smaller than 20 acres enjoy the right to host a cellular tower. Similarly, the Township's application does not demonstrate that granting the variance would not confer on the Township "special privileges" that are denied by virtue of the zoning ordinances to other parcels in the same zoning district. Because the ZBA did not make findings that the Township met the standards for granting a variance under the Township's variance ordinance, and because the Township's application did not demonstrate entitlement to a variance under the Township's variance ordinance, the circuit court erred in concluding the ZBA's decision was supported by competent, material, and substantial evidence on the record and was not an abuse of the ZBA's discretion.

In light of our determination, we decline to reach appellants' additional arguments that their due process rights were violated by the decision of the ZBA.

Reversed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola